# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
VIOLENA BEAN                            )
        Plaintiff,              )
                               )
    v.                                 )      Civil Action No. 14-1723 (ABJ)
                               )
DISTRICT OF COLUMBIA                    )
                               )
        Defendant.              )
_____)

## MEMORANDUM OPINION

Plaintiff Violena Bean, a former clerical assistant in the Public Information Office ("PIO") of the District of Columbia Metropolitan Police Department ("MPD"), has brought this action against the District of Columbia. The complaint alleges that defendant discriminated and retaliated against her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, _et seq._, and that ultimately, plaintiff was constructively terminated as a result of a series of disciplinary actions taken after she engaged in protected activity. Compl. [Dkt. # 1]. Defendant has moved for summary judgment on all counts, arguing that "no reasonable juror could find that [defendant] discriminated against [p]laintiff because of her age, retaliated against her because of her protected activity, or that [defendant's] conduct resulted in [plaintiff's] constructive termination." Def.'s Mot. for Summ. J. [Dkt. # 16] ("Def.'s Mot."); Def.'s Mem. in Supp. of Def.'s Mot. [Dkt. # 16] ("Def.'s Mem.") at 1. Plaintiff opposed the motion, Pl.'s Opp. to Def.'s Mot. [Dkt. # 20] ("Pl.'s Opp."), and defendant replied. Def.'s Reply to Pl.'s Opp. [Dkt. # 25] ("Def.'s Reply").

The Court finds that plaintiff has produced sufficient direct evidence of discrimination – namely, discriminatory statements made by plaintiff's direct supervisor – to entitle her to a jury trial on Count I. However, plaintiff has failed to produce sufficient evidence

for a reasonable juror to conclude either that plaintiff was retaliated against because of her protected activity, or that she was constructively terminated. Therefore, the Court will grant defendant's motion for summary judgment on plaintiff's retaliation claim (Count II) and constructive termination claim (Count III), but it will deny the motion with respect to her discrimination claim (Count I).

## BACKGROUND[1]

The facts are not in dispute except where noted.[2] Plaintiff Violena Bean began working for MPD as a Public Information Office clerical assistant in 2004. Def.'s SOF ¶ 1; Pl.'s SOF ¶ 1. Plaintiff's primary duty was to compile newspaper clippings from various news sources on matters of interest to MPD. Def.'s SOF ¶ 2; Pl.'s SOF ¶ 2.

In 2010, Gwendolyn Crump became the MPD Director of Communications and plaintiff's direct supervisor. Pl.'s Counter SOF ¶ 7; Def.'s Resp. SOF ¶ 7. Plaintiff was sixty-two years old at the time. Pl.'s Counter SOF ¶ 9; Def.'s Resp. SOF ¶ 9.

---

1      Pursuant to Local Civil Rule 7(h), defendant submitted its statement of undisputed material facts in support of its motion for summary judgment. Def.'s Statement of Undisputed Facts [Dkt. # 16] ("Def.'s SOF"). Plaintiff filed a responsive statement of material facts in dispute as part of her brief in opposition to defendant's motion for summary judgment. Pl.'s Statement of Material Facts to Which There is Dispute [Dkt. # 20] ("Pl.'s SOF"). In the same brief, plaintiff provided an additional "Counter-Statement of Material Facts in Dispute." Pl.'s Counter-Statement of Material Facts in Dispute [Dkt. # 20] ("Pl.'s Counter SOF"). Defendant then filed a response to plaintiff's counter-statement of material facts attached to defendant's reply brief. Def.'s Resp. to Pl.'s Counter SOF [Dkt. # 25-1] ("Def.'s Resp. SOF"). Though plaintiff's counter-statement of material facts and defendant's response to those facts are not contemplated by Local Civil Rule 7(h) – and it is unclear why these additional factual statements are provided – they nevertheless identify additional undisputed facts. So, when the parties acknowledge that a fact is undisputed in either set of factual statements, and the record supports those facts, the Court will cite to those statements.

2      The Court has attached a chronology of events to the Memorandum Opinion.

2

Plaintiff's relationship with Crump was strained from the beginning. In February 2011, plaintiff was cited twice by Crump: once for insubordination, and once for purportedly failing to submit complete news clippings. Pl.'s Counter SOF ¶ 22; Def.'s Resp. SOF ¶ 22. On February 23, 2011, plaintiff was accused of speaking to Crump in a "loud, hostile, and unacceptable" manner after Crump asked her if she had reviewed an email containing her 2010 performance evaluation. Ex. J to Pl.'s Opp. [Dkt. # 20-1] ("Ex. J") at 1–2. One day later, plaintiff was cited for failing to include several articles in her morning clippings as directed by a PIO officer. Ex. L to Pl.'s Opp. [Dkt. # 20-1] ("Ex. L") at 1–3. Investigations into both incidents sustained the allegations. Pl.'s Counter SOF ¶¶ 27–28; Def.'s Resp. SOF ¶¶ 27–28.[3]

---

3      Plaintiff states in her counter-statement of material facts that Sergeant Raul Mendez, Jr. "sustained the allegations" against her with regard to the insubordination citation, and also that she was subjected to a five-day suspension as a result. Pl.'s Counter SOF ¶ 27. Defendant does not dispute this fact. Def.'s Resp. SOF ¶ 27. However, plaintiff fails to point to any evidence to support the fact that it was Mendez who sustained the allegations or that she was suspended for five days, and the Court does not need to accept allegations that lack any factual basis in the record. *Dist. Intown Props. Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999). Plaintiff relies on its Exhibit J, which is the "Final Investigative Report and Recommendation Concerning the Unprofessional Conduct (Insubordination) by Civilian Employee Violena Bean." Ex. J. But Mendez's name is not mentioned anywhere in the report, and the report does not state that plaintiff would be suspended for five days. *See id.* Plaintiff provides evidence that Mendez requested to be removed from the investigation since plaintiff had previously filed a sexual assault complaint against him, Ex. K to Pl.'s Opp. [Dkt. # 20-1] ("Ex. K") at DCBEAN00002271–2272, and Crump said that Inspector Ralph Ennis directed Mendez to continue with the investigation. *Id.* But the report was ultimately sent by Sergeant James Meagher, Ex. J at 1, an administrative sergeant in the executive office of the chief of police who "would sometimes be involved in discipline." Ex. C to Pl.'s Opp. [Dkt. # 20-1] ("Crump Dep.") at 62:16–63:1.

     With regard to the second citation, plaintiff posits that she was ultimately suspended for nine days, Pl.'s Counter SOF ¶ 28, and defendant does not dispute this fact. Def.'s Resp. SOF ¶ 28. Again, though, plaintiff fails to point to any evidence of the suspension. Plaintiff relies on Exhibit L, the "Final Investigative Report and Recommendation Concerning the Unprofessional Conduct and Neglect of Duty by Civilian Employee Violena Bean," but the report makes no mention of a nine-day suspension. *See* Ex. L.

## The Fifteen-Day Suspension

On October 24, 2012, plaintiff answered a phone call from a reporter who had contacted the PIO to speak to an officer about an important news event. Pl.'s Counter SOF ¶ 32; Def.'s Resp. SOF ¶ 32. She did not make a written record of the reporter's call, and she was cited for failing to do so. Pl.'s Counter SOF ¶ 33; Def.'s Resp. SOF ¶ 33.[4] Subsequently, on February 1, 2013, plaintiff received a Proposed Notice of Adverse Action stating that she was to be suspended for fifteen days without pay as a result of the October incident. Pl.'s Counter SOF ¶ 38; Def.'s Resp. SOF ¶ 38; Ex. 4 to Def.'s Mot. [Dkt. # 16-1] ("Ex. 4") at 1.

On February 11, 2013, in response to the proposed fifteen-day suspension, plaintiff sought EEO counseling and, on February 13, 2013, she filed a complaint with the District of Columbia Office of Human Rights ("OHR") alleging that she had been discriminated against on the basis of her age in connection with the fifteen-day suspension. Pl.'s Counter SOF ¶ 41; Def.'s Resp. SOF ¶ 41. In a written statement completed as part of the EEO counseling and eventual OHR complaint, plaintiff alleged that Crump had said: "The officers are faster than you, you need to work, work, work"; and "You've been here so long when are you going to retire?" Ex. B to Pl.'s Opp. [Dkt. # 20-1] ("OHR Complaint").

On March 5, 2013, plaintiff received a Notice of Final Decision to impose the fifteen-day suspension and was advised of her right to appeal the suspension with the Office of Employee Appeals ("OEA"). Pl.'s Counter SOF ¶ 43; Def.'s Resp. SOF ¶ 43; Ex. 4. She began serving her

---

4    Plaintiff maintains that the reporter hung up before she could take a message that included his name and phone number, and that she verbally reported the message. Ex. A to Pl.'s Opp. [Dkt. # 20-1] ("Bean Dep.") at 32:4–34:10. And even though plaintiff denies that the failure to record a message was the basis for the resulting discipline, Pl.'s SOF ¶ 4, she admitted in her deposition that no written record of the call was ever created. Bean Dep. at 32:4–34:10.

fifteen-day suspension on March 18, 2013, Def.'s SOF ¶ 4; Pl.'s SOF ¶ 4, and she filed an OEA appeal contesting it on April 4, 2013.  Pl.'s Counter SOF ¶ 46; Def.'s Resp. SOF ¶ 46.

On August 16, 2013, Crump exchanged emails with Matthew Miranda, a Human Resources Special Assistant, regarding MPD's response to plaintiff's OEA appeal, Pl.'s Counter SOF ¶ 65; Def.'s Resp. SOF ¶ 65, and defendant filed its response on August 20, 2013.  Pl.'s Counter SOF ¶ 66; Def.'s Resp. SOF ¶ 66.  On November 5, 2013, Crump was served with a Notice of a Deposition in plaintiff's OEA appeal.  Pl.'s Counter SOF ¶ 70; Def.'s Resp. SOF ¶ 70.  And on December 9, 2013, defendant produced responses to plaintiff's discovery requests in this matter. Pl.'s Counter SOF ¶ 84; Def.'s Resp. SOF ¶ 84.

### The Thirty-Five-Day Suspension

On April 12, 2013, Crump assigned plaintiff to gather newspaper articles for the Chief of Police and the Command Staff.  Ex. 3 to Def.'s Mot. [Dkt. # 16-1] ("Ex. 3") at 2.  However, plaintiff failed to complete the assignment, and she was cited a few days later for "neglect of duty, insubordination and incompetence."  Pl.'s Counter SOF ¶ 49; Def.'s Resp. SOF ¶ 49; *see also* Def.'s SOF ¶ 6; Pl.'s SOF ¶ 6; Ex. 3 at 2.  While plaintiff does not dispute that she failed to complete the assignment in question, she maintains that her inability to complete the assignment was the result of computer problems.  Pl.'s Counter SOF ¶ 47; Bean Dep. at 67:11–69:10.

On June 27, 2013, plaintiff was served with a Proposed Notice of Adverse Action stating that she was to be suspended for thirty-five days as a result of the April incident.  Ex. 6 to Def.'s Mot. [Dkt. # 16-1] ("Ex. 6") at 1.  The decision to suspend plaintiff was upheld on July 11, 2013, and she began her suspension on August 12, 2013.  Pl.'s Counter SOF ¶¶ 58, 61; Def.'s Resp. SOF ¶¶ 58, 61; Def.'s SOF ¶ 6; Pl.'s SOF ¶ 6.  On September 18, 2013, plaintiff returned to work. Pl.'s Counter SOF ¶ 68; Def.'s Resp. SOF ¶ 68.

**Plaintiff's Formal and Informal Complaints**

On April 30, 2013, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") against MPD, alleging that she had been subject to unlawful age discrimination and retaliation in connection with previous suspensions that had been imposed upon her as well as other harassing treatment in the workplace. Pl.'s Counter SOF ¶ 50; Def.'s Resp. SOF ¶ 50; Ex. 9 to Def.'s Mot. [Dkt. # 16-1]. On July 22, 2013, Crump was interviewed regarding that EEOC complaint. Pl.'s Counter SOF ¶ 62; Def.'s Resp. SOF ¶ 62.

Also, the parties do not dispute that plaintiff had previously filed an internal EEO complaint, and that during the week of April 16, 2012, the MPD EEO office interviewed her with regard to that complaint. Pl.'s Counter SOF ¶ 26; Def.'s Resp. SOF ¶ 26. Neither party provides any further information about the substance of that complaint.

In addition, at some point in time while Crump was her supervisor, plaintiff complained to Crump that she felt "harassed," prompting a meeting that included plaintiff, Crump, and Assistant Chief Alfred Durham. *See* Pl.'s Counter SOF ¶¶ 23, 25; Def.'s Resp. SOF ¶¶ 23, 25. Again, neither party provides any other details.

**The November 20, 2013 Supervisory Support Program Meeting**

On May 24, 2013, the Internal Affairs Bureau ("IAB") generated an automatic referral to place plaintiff in the Supervisory Support Program ("SSP") as a result of the October 2012 and April 2013 citations. Pl.'s Counter SOF ¶ 51; Def.'s Resp. SOF ¶ 51. SSP is an intervention program similar to placing an employee on a performance improvement plan. Pl.'s Counter SOF ¶ 52; Def.'s Resp. SOF ¶ 52.

On June 11, 2013, Crump received notice that plaintiff had reached the SSP threshold, and she was directed to develop an SSP plan for plaintiff by August 30, 2013. Pl.'s Counter SOF ¶ 56;

Def.'s Resp. SOF ¶ 56.[5]   However, Crump did not complete or submit the required SSP

Intervention Plan by August 30, 2013 as required, and she failed to do so over the next few months

despite receiving notices that the plan was overdue.  Pl.'s Counter SOF ¶¶ 67, 69; Def.'s Resp.

SOF ¶¶ 67, 69.[6]  Finally, on November 7, 2013, Meagher sent an email to Crump with a subject

line reading, "Hello please call me when you can.  We need to do Ms. Bean's SSP."  Ex. AA to

Pl.'s Opp. [Dkt. # 20-1] ("Ex. AA").[7]

On November 20, 2013, Meagher informed plaintiff by email that she was being assessed

for an SSP plan and scheduled a meeting with her for the same day at 1:30 P.M. – a little more

than an hour after the email was sent.  Pl.'s Counter SOF ¶ 72; Def.'s Resp. SOF ¶ 72.  Plaintiff

arrived at the conference room where the meeting was to be held, but when she realized that no

union representative was present, she left the conference room and emailed Meagher that she

---

5        Plaintiff points to an automatically generated email from the Personnel Performance Management System ("PPMS") to Sergeant Meagher to support this fact, Ex. S to Pl.'s Opp. [Dkt. # 20-1], but that email does not appear to have been sent to Crump.  However, the email does state, "Meagher shall conduct the SSP Assessment and Ms. Gwendolyn Crump is responsible for developing the Intervention Plan which is due on August 30, 2013," and the parties do not dispute that Crump received notice of the SSP requirements on that day.  *Id.*; Pl.'s Counter SOF ¶ 56; Def.'s Resp. SOF ¶ 56.  Other evidence in the record also supports this fact.  *See* Ex. 8 to Def.'s Mot. [Dkt. # 16-1] ("Ex. 8") (June 11, 2013 memorandum stating that "Sergeant James Meagher shall conduct the SSP Assessment and Ms. Gwendolyn Crump is responsible for developing the Intervention Plan which is due on August 30, 2013").

6        The parties do not dispute that "[f]rom September through November 16, 2013, Ms. Crump received numerous notices that Ms. Bean's SSP plan was overdue."  Pl.'s Counter SOF ¶ 69; Def.'s Resp. SOF ¶ 69.  The record before the Court contains only two such notices from that time period, though, one of which was sent to Meagher.  Ex. Z to Pl.'s Opp. [Dkt. # 20-1] at DCBEAN0005024, DCBEAN00003545.

7        While the defense does not dispute plaintiff's statement that "on November 7, 2013, Ms. Crump reminded Sgt. Meagher that Ms. Bean's intervention SSP plan needed completing," Pl.'s Counter SOF ¶ 71; Def.'s Resp. SOF ¶ 71, the supporting email supplied to the Court was sent from Meagher *to* Crump, not the other way around.  Ex. AA.

would "be happy" to meet with him as soon as a union representative was available. Pl.'s Counter SOF ¶¶ 75–76; Def.'s Resp. SOF ¶¶ 75–76. In an investigative report about the events of November 20, Crump stated that she and Meagher approached plaintiff's desk at 1:45 P.M. to ask why plaintiff had not reported to the meeting room. Ex. 2 to Def.'s Mot. [Dkt. # 16-1] ("Ex. 2") at 2. According to Crump, plaintiff "ignored Sgt. Meagher's directives, and refused to acknowledge him." *Id.*; *see also* Crump Dep. at 95:1–96:15. Plaintiff calls this account "untruthful." Bean Dep. at 54:19–55:5, 56:17–57:1.

In any event, plaintiff returned to the meeting room at 2:00 P.M. with two union representatives. Pl.'s Counter SOF ¶ 78; Def.'s Resp. SOF ¶ 78. As plaintiff describes it, she was not presented with an assessment and performance plan, but she was asked questions about her "rent" and "personal living" instead. Bean Dep. at 46:12–18. Defendant disputes this and maintains that plaintiff answered "no comment" to every question posed by Meagher. Ex. 2 at 2.[8]

After the meeting, Meagher lodged a complaint about plaintiff's conduct on November 20, and Crump handled the investigation into the allegations of plaintiff's insubordination. *See* Ex. 2 at 3. On December 27, 2013, Crump submitted a final investigative report concerning the events of that day, and she recommended that the investigation be forwarded to the Disciplinary Review Branch ("DRB") for its review and recommendation. *Id.* at 7. One month later, the final

---

8    Defendant does not dispute the statement included in plaintiff's Counter-Statement of Facts that "[n]o intervention plan was ever submitted to Ms. Bean then or ever." Pl.'s Counter SOF ¶ 82; Def.'s Resp. SOF ¶ 82. However, defendant attached as an exhibit to its summary judgment motion an SSP Assessment and Intervention Plan for plaintiff dated December 19, 2013, which plaintiff "refused to sign." Ex. 8 at 2–4. There is no dispute that as of March 2014, Crump was still receiving notices that plaintiff's SSP plan was overdue. Pl.'s Counter SOF ¶ 86; Def.'s Resp. SOF ¶ 86. So it is unclear what steps if any were taken after the December plan was created.

investigative report was forwarded to the DRB Director, Michael Eldridge, who recommended that plaintiff be terminated. Ex. 10 to Def.'s Mot. [Dkt. # 16-1] ("Ex. 10") at 1.[9]

On March 5, 2014, plaintiff received a Proposed Notice of Adverse Action advising her that she had been recommended for termination. Def.'s SOF ¶ 8; Pl.'s SOF ¶ 8; *see* Pl.'s Counter SOF ¶¶ 83, 87; Def.'s Resp. SOF ¶¶ 83, 87. On April 11, 2014, a Hearing Officer issued a final decision recommending that plaintiff's termination be upheld. Pl.'s Counter SOF ¶ 89; Def.'s Resp. SOF ¶ 89. A week later, plaintiff received a Notice of Adverse Action Hearing Officer's Decision informing her that the decision to terminate her had been sent to a Deciding Official from the DRB and that she could request an audience with the Deciding Official within seven days. Ex. GG to Pl.'s Opp. [Dkt. # 20-1]; *see* Pl.'s Counter SOF ¶ 91; Def.'s Resp. SOF ¶ 91. Although it is undisputed that plaintiff knew she was going to be terminated and ultimately retired, *see* Def.'s SOF ¶¶ 15–16; Pl.'s SOF ¶¶ 15–16; Pl.'s Counter SOF ¶ 96; Def.'s Resp. SOF ¶ 96, the exact date of her retirement is disputed. On approximately April 25, 2014, plaintiff submitted a notice of her intent to retire, which became effective as of May 2, 2014. Ex. HH to Pl.'s Opp. [Dkt. # 20-1] at DCBEAN00011003; Ex. 10. And on May 1, 2014, the Deciding Official upheld plaintiff's termination. Ex. E to Pl.'s Opp. [Dkt. # 20-1] at DCBEAN00007057.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the

---

9    Although the DRB Director characterizes Crump's final investigative report as "recommend[ing] that Ms. Bean be cited for adverse action for her misconduct" and "disciplined for her misconduct," Ex. 10 at 1, the record reflects that Crump's report sustained the allegations against plaintiff and that then Crump recommended that the "investigation be forwarded to the [DRB] for their review and recommendation." Ex. 2 at 6–7.

district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

Plaintiff claims in Count I that defendant discriminated against her on the basis of her age in connection with multiple suspensions and the recommendation for her termination. She alleges in Count II that defendant took these actions in retaliation for the fact that she made formal and informal complaints regarding alleged age discrimination. And in Count III, she claims that this mistreatment forced her to retire.

There is no question that plaintiff's relationship with her supervisor was marked with conflict. Because plaintiff has provided some direct evidence of discriminatory statements made by Crump, the fact-finding must be left to the jury, and the Court will deny defendant's motion for

summary judgment on Count I. But since defendant has come forward with evidence to show that plaintiff was disciplined and ultimately recommended for termination because of her poor job performance, and not for a retaliatory purpose, and plaintiff has failed to come forward with evidence to show that defendant's stated reasons were either pretextual or tainted by improper animus, the Court will grant defendant's motion for summary judgment on Count II. And because plaintiff has failed to provide any evidence that she was forced to retire as a result of intolerable working conditions, the Court will grant defendant's motion for summary judgment on Count III the constructive termination claim.

I.    **The Court will deny defendant's motion for summary judgment on Count I alleging ADEA discrimination because plaintiff has produced sufficient direct evidence to entitle her to a jury trial.**

Plaintiff alleges that the District discriminated against her on the basis of her age in violation of the ADEA. The ADEA provides:

> It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1). The ADEA protects "individuals who are at least 40 years of age." *Id.* § 631(a). To succeed on an ADEA discrimination claim, a plaintiff must prove that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the [adverse] action gives rise to an inference of discrimination." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005), quoting *Stella v. Mineta*, 248 F.3d 135, 145 (D.C. Cir. 2002). The parties do not dispute that plaintiff was well over forty years of age at all relevant times. Pl.'s Counter SOF ¶ 9; Def.'s Resp. SOF ¶ 9. And defendant does not seem to challenge that plaintiff was subject to adverse employment actions. *See* Def.'s Mem. at 5–6; Pl.'s Opp. at 21; *see also* Def.'s SOF ¶¶ 4, 6; Pl.'s

SOF ¶¶ 4, 6. So the only question is whether plaintiff has produced sufficient evidence to support a reasonable inference of discrimination.

Courts analyze ADEA cases at the summary judgment stage under the same standard as Title VII cases. *Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014). Accordingly, "[a]t the summary judgment stage, the operative question is whether the employee produced sufficient evidence for a reasonable jury to find that . . . the employer intentionally discriminated against the employee on the basis of age." *Id.* (internal quotations omitted).[10] Plaintiffs who are able to proffer direct evidence of discriminatory intent are generally entitled to a jury trial. *Id.*

Direct evidence includes "a statement that itself shows . . . bias in the employment decision." *Wilson*, 753 F.3d at 247 (holding that an employer's statement that employees "didn't come here to work, [but] came here to retire," was sufficient direct evidence for a reasonable factfinder to conclude that a discriminatory intent motivated the adverse employment action), quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576–77 (D.C. Cir. 2013); *see also Ayissi-Etoh*, 712 F.3d at 576 (reversing the grant of summary judgment because plaintiff had provided direct evidence of discrimination in the form of a racially charged statement made by his manager). But a stray remark, especially one made by a non-decision maker, or a statement made by a decision maker that is unrelated to the relevant employment decision itself, does not constitute direct evidence. *Kalekiristos v. CTF Hotel Mgmt.*, 958 F. Supp. 641, 665 (D.D.C. 1997) (concluding there was no direct evidence of racial or national origin discrimination where plaintiff only provided evidence of vague statements that were, at most, insensitive), *aff'd without op.*, 132 F.3d 1481 (D.C. Cir. 1997) (citation omitted); *see also Steele v. Carter*, 192 F. Supp. 3d 151, 165

---

10     Because of the similarity between how courts analyze ADEA and Title VII claims, the Court cites to case law under both statutory schemes throughout this opinion.

(D.D.C. 2016) (concluding there was no direct evidence of age discrimination where the speaker was not involved in plaintiff's termination and allegedly made the remarks at the very start of plaintiff's employment).

Plaintiff has produced two statements that constitute direct evidence of age discrimination, entitling her to a jury trial. First, in plaintiff's February 13, 2013 OHR complaint, she alleged that Crump told her, "[t]he officers are faster than you, you need to work, work, work," followed by: "[y]ou've been here so long when are you going to retire?" OHR Complaint. Second, in her deposition, plaintiff recounted the following incident:

> Q: Okay. Let me ask you this, why were you terminated from MPD?
> [Plaintiff's] A: I retired before they terminated me.
> Q: Okay.
> A: Because Ms. Crump had said that you have been wrote up [sic] three times. And she was going to fire me, have me fired.
> Q: She told you that verbally?
> A: Yes.
> Q: Okay. Did she say anything else?
> A: She said that I was old.
> Q: Ms. Crump said that you were old?
> A: Old and slower.
> Q: Old and slower?
> A: Yes.

Bean Dep. at 26:2–16. Both statements were made by Crump, plaintiff's direct supervisor, who was the person who cited her for a number of incidents that resulted in disciplinary action, including suspensions without pay, and who prepared the investigative report that ultimately led to her termination. Ex. 10; Ex. 2.

Defendant contends that these statements are just "stray remarks" without any nexus to an adverse employment action. Def.'s Reply at 2–3. But on both occasions, plaintiff's age was mentioned specifically in connection with the termination of her employment. And the statements could lead a reasonable factfinder to conclude that Crump acted with discriminatory intent.

In the end, a jury may not credit plaintiff's account, or it may accept defendant's evidence that there were legitimate reasons to discipline and terminate plaintiff. But "[c]redibility determinations . . . are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Because plaintiff has produced direct evidence of discriminatory statements that would permit a reasonable jury to infer that discriminatory intent motivated the adverse employment actions taken against her, the Court cannot resolve the case as a matter of law, and it will deny defendant's motion for summary judgment on Count I.

II.     **The Court will grant defendant's motion for summary judgment on Count II alleging ADEA retaliation because plaintiff has failed to produce sufficient evidence that would allow a reasonable juror to infer retaliation.**

Under the ADEA, it is "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by" the ADEA or because that individual "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under" the ADEA. 29 U.S.C. § 623(d); *see Gomez-Perez v. Potter*, 553 U.S. 474, 489 (2008) (recognizing that the ADEA prohibits retaliation against federal-sector employees as well under 29 U.S.C. § 633a). When a plaintiff relies on circumstantial evidence to establish her employer's retaliatory motivation for an adverse employment action, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).

"Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing (1) that [she] engaged in statutorily protected activity; (2) that [she] suffered a materially adverse action by [her] employer; and (3) that a causal link connects the two." *Jones*, 557 F.3d at 677, citing *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). Once a prima facie case has

been established, "the burden shifts to the employer to produce a 'legitimate, non-discriminatory reason' for its actions." *Id.*, quoting *Wiley*, 511 F.3d at 155. If the employer provides a legitimate, non-discriminatory reason, "the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer . . . retaliation from all the evidence." *Id.*, quoting *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). The Court reviews all relevant evidence – "prima facie, pretext, and any other – to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer retaliation." *Id.* at 679, *quoting Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002).

Unlike in the discrimination context, there are no mixed-motive retaliation claims; the plaintiff must establish that "the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533.

Since defendant has proffered legitimate, non-retaliatory reasons for the adverse actions taken against plaintiff – that is, plaintiff's poor work performance and insubordination – the Court must evaluate whether plaintiff has provided sufficient evidence to enable a reasonable jury to find that the employer's stated reasons were not the actual reasons for the adverse actions, and that the desire to retaliate was the but-for cause of the adverse actions. Because plaintiff's claims are based solely upon weak temporal proximity evidence, and plaintiff has not raised a genuine dispute over the employer's honest belief in its proffered explanation for its adverse actions, the Court will grant defendant's motion for summary judgment on Count II.

### A.  The Fifteen-Day Suspension

Plaintiff received notice of a proposed fifteen-day suspension on February 1, 2013, after she was cited for failing to take a written message when a reporter called on October 24, 2012. *See* Ex. 4.  She began serving the suspension on March 18, 2013.  *Id.*

Defendant does not dispute that plaintiff engaged in protected activity when she filed an EEOC complaint on April 30, 2013.  Def.'s Mem. at 7.  But it maintains that "[t]he incident and the decision to suspend [p]laintiff preceded" that date, so it cannot serve as the basis for plaintiff's retaliation claim.  *Id.* at 8.  Plaintiff responds that her protected activities began before the filing of the 2013 EEOC complaint and the February 2013 disciplinary action, and that she was suspended in retaliation for those protected activities.  Pl.'s Opp. at 28–29.  But none of the evidence she has adduced supplies the causal connection necessary for a retaliation claim.

### 1.  Plaintiff's 2011 EEO Complaint Against Mendez

Plaintiff insists that she has "adduced record evidence that as of March 2011, an EEO case initiated by her was pending against [Sergeant Raul Mendez]" and that she has "establish[ed] a causal connection through temporal proximity to . . . her fifteen-day . . . suspension[]."  Pl.'s Opp. at 28; Ex. K.[11]  The evidence reflects that she lodged a sexual harassment complaint against Mendez in 2011.  Ex. K ("[Plaintiff] has made an accusation against [Mendez] for alleged sexual harassment."); *see* Pl.'s Counter SOF ¶ 20; Def.'s Resp. SOF ¶ 20.[12]  But plaintiff has brought this

---

11    Plaintiff also asserts that "an EEO complaint filed by her was being investigated by the EEO office a year later in April 2012," and she had "filed an internal complaint of discrimination in February 2012."  Pl.'s Opp. at 28.  But plaintiff has provided no evidence of the other two complaints she refers to that occurred in 2012 other than the fact that she was interviewed during the week of April 16, 2012, with regard to an internal EEO complaint.  Pl.'s Counter SOF ¶ 26; Def.'s Resp. SOF ¶ 26; *see* Ex. R to Pl.'s Opp. [Dkt. # 20-1].  No reasonable jury could infer retaliation between the 2012 complaints and the fifteen-day suspension without more information.

12    It is unclear from the record if this was a formal or informal complaint.

retaliation claim under the ADEA. So, the prior filing of a sexual harassment complaint would not constitute evidence that plaintiff was retaliated against for engaging in protected activity under the ADEA.

Even if the complaint was filed in March 2011, and it constituted protected activity under the statute, plaintiff points to no direct evidence of retaliatory intent. In the absence of direct evidence, the Court may infer a causal connection between the protected activity and the adverse action on a "showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985).

Here, the fifteen-day suspension did not occur close in time to the alleged protected activity. While there is evidence that Crump learned of the sexual harassment complaint in an email dated March 11, 2011, *see* Ex. K, there were nineteen months between the March 2011 complaint and the October 2012 event that led to plaintiff's suspension, and twenty-three months between the complaint and the date plaintiff received notice of the proposed suspension. This window of time is much too great to establish causation on the basis of temporal proximity. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all."); *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) (observing that the Supreme Court and D.C. Circuit have suggested that "a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation," but that there is technically no "bright-line three-month rule").

Because plaintiff cannot point to temporal proximity evidence that would create a causal connection, no reasonable jury could infer retaliation.

### 2. Plaintiff's Statement to Her Supervisor That She Felt "Harassed"

In her opposition, plaintiff also argues that she "had complained to Ms. Crump that she was being 'harassed' and 'picked on,'" and so "defendant is utterly mistaken that [she] cannot establish a causal connection through temporal proximity" to her fifteen day suspension. Pl.'s Opp. at 28. Defendant challenges plaintiff's characterization of this conversation as protected activity, arguing that plaintiff was just complaining of "ordinary workplace tribulations and a difficult relationship with her supervisor." Def.'s Reply at 4; *see Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) ("While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition.").

While Crump did testify in her deposition that plaintiff told her at some point that she was "being harassed," Crump Dep. at 47:8–12, plaintiff has not provided any evidence detailing the nature of the harassment she brought to her supervisor's attention. Moreover, plaintiff has produced no evidence of when this conversation took place. So, even if plaintiff had established that she made a complaint about unlawful age discrimination that could qualify as protected activity, she again has failed to come forward with any evidence of temporal proximity that would allow a reasonable jury to infer that the February 2013 suspension was retaliatory.

### B. The Thirty-Five-Day Suspension

On June 27, 2013, plaintiff was notified of the proposed thirty-five-day suspension arising from misconduct on April 12, 2013, Ex. 6 at 1, and she began serving her suspension on August 12, 2013. Def.'s SOF ¶ 6; Pl.'s SOF ¶ 6. Defendant contends that "[t]he incident for which [p]laintiff was investigated and disciplined occurred prior to her filing an EEOC complaint" on April 30, 2013, so this protected activity "cannot serve as the basis of her retaliation claim." Def.'s

Mem. at 9. But plaintiff again asserts that she was being retaliated against for engaging in other protected activities. Pl.'s Opp. at 28.

### 1. Plaintiff's February 13, 2013 OHR Complaint

After receiving notice of the proposed fifteen-day suspension, plaintiff sought EEO counseling on February 11, 2013, and filed an OHR complaint on February 13. Pl.'s Counter SOF ¶ 41; Def.'s Resp. SOF ¶ 41. She argues that the thirty-five-day suspension was in retaliation for her filing an OHR complaint alleging age discrimination, and that a reasonable jury could infer retaliation based on the temporal proximity between the events. Pl.'s Opp. at 28–29 ("After all, [plaintiff's] OHR February 13, 2013, complaint was lodged a mere two months to the day, April 12, 2013, before Ms. Crump initiated the disciplinary action that supported the suspension.").

While the two-month gap between these two incidents is evidence that could potentially advance plaintiff's prima facie case,[13] the defense has responded by asserting that plaintiff's poor work performance was the legitimate, non-retaliatory reason for its decision to suspend her. *See* Def.'s Mem. at 12–13. At this point, the Court must only determine whether plaintiff has provided enough evidence to rebut defendant's proffered reason and to support a finding that defendant's explanation was pretext for retaliation. *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007) (finding that plaintiff did not have sufficient evidence to rebut employer's explanation for the adverse employment actions where the only evidence linking his protected activities to the adverse

---

[13]     Although both parties initially cite to April 12, 2013, as the operative date that ultimately led to the thirty-five-day suspension, Def.'s Mem. at 9; Pl.'s Opp. at 28, defendant argues in its reply that the Court should analyze plaintiff's temporal proximity argument based on the day the suspension was actually imposed – August 12, 2013 – and that the suspension occurred "far too remotely in time to be the basis of a retaliation claim." Def.'s Reply at 5. The Court need not decide what date actually triggers the adverse action – or if potentially there were two adverse actions, the citation in April and then the ultimate proposal for a suspension in June – because regardless of which date the Court uses, plaintiff has failed to present sufficient evidence from which a reasonable juror could infer retaliation.

employment actions was the proximity in time between the events).  And even though evidence used to support a plaintiff's prima facie case may sometimes suffice to rebut an employer's proffered reasons, temporal proximity evidence alone is not enough to render summary judgment improper.  *Id.*  Rather, "positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine."  *Id.*

Here, plaintiff does not point to any evidence beyond mere temporal proximity.  She has not presented evidence that would demonstrate that the employer's stated reasons were pretextual, and she has not shown that anyone involved in disciplining her for the April 12, 2013 incident resulting in the suspension was aware of the OHR complaint.  Therefore, the evidence is not sufficient to enable a reasonable juror to find that retaliation was the "but-for" cause of the suspension.

### 2.    Plaintiff's April 4, 2013 OEA Appeal

Plaintiff has similarly failed to provide sufficient evidence for a reasonable juror to conclude that the filing of an OEA appeal of the fifteen-day suspension on April 4, 2013, resulted in the June 2013 suspension.  There is some evidence of temporal proximity between this protected activity and the adverse action since the April 2013 OEA appeal was filed only eight days before the events underlying the thirty-five-day suspension that was imposed in June.  But the defense maintains that it suspended plaintiff because of her poor work performance.  Def.'s Mem. at 12–13.  And again, plaintiff has failed to provide any additional "positive evidence beyond mere proximity" to rebut the defense's proffered explanation.  *See Woodruff*, 482 F.3d at 530.

First of all, she has not produced any evidence that any person involved in the decision to suspend her for thirty-five days was aware of the OEA appeal at the time.  There is evidence that Crump learned about the OEA appeal four months *after* the incident giving rise to plaintiff's

suspension, and almost two months after the sanction was imposed, when she exchanged emails with HR on August 16, 2013, regarding MPD's response to the appeal. Pl.'s Counter SOF ¶ 65; Def.'s Resp. SOF ¶ 65. But by that time, the decision to suspend plaintiff had already been upheld and the suspension was underway. Pl.'s Counter SOF ¶¶ 58, 61; Def.'s Resp. SOF ¶¶ 58, 61. And second, again, plaintiff has not pointed to any evidence that would lead a jury to conclude that defendant's explanation was pretextual.

Because plaintiff cannot point to anything beyond mere temporal proximity, no reasonable juror could conclude that the thirty-five-day suspension was leveled against her because of her April 4, 2013 OEA appeal.

### 3. Plaintiff's April 30, 2013 EEOC Complaint

Plaintiff has also failed to provide evidence from which a reasonable jury could infer that the thirty-five-day suspension was in retaliation for filing an EEOC complaint on April 30, 2013.[14] First, she filed the complaint two weeks *after* the April 12 incident resulting in an investigation and the ultimate recommendation of a thirty-five-day suspension. And even if the Court were to utilize June 27, 2013, as the operative date since that is the date of the notice of proposed adverse action, plaintiff has not pointed to any evidence beyond this mere temporal proximity to rebut defendant's proffered explanation for imposing the thirty-five-day suspension. *See Woodruff*, 482 F.3d at 530. There is no evidence that any District employee was aware of the EEOC complaint until Crump was interviewed as part of the EEOC investigation on July 22, 2013, which was three

---

14      Plaintiff's EEOC complaint cannot be causally linked to any of the alleged adverse actions. The complaint was filed *after* plaintiff's fifteen-day suspension ended. If the SSP meeting is considered an adverse employment action, it took place seven months from the original filing of the complaint and four months from Crump first learning of it. And plaintiff was recommended for termination almost one year after the complaint was filed, and approximately eight months after Crump learned about it. Plaintiff's filing of her EEOC complaint is too temporally attenuated from any subsequent adverse employment action to permit a reasonable juror to infer retaliation.

weeks *after* plaintiff received the notice of proposed adverse action, and eleven days *after* the final decision imposing the suspension was issued on July 11, 2013. And plaintiff points to no other reasons to disbelieve defendant's explanation.

Therefore, plaintiff has not provided sufficient evidence from which a reasonable jury could infer that she was suspended for thirty-five days in retaliation for engaging in any protected activity on April 30, 2013.

### C. The November 20, 2013 SSP Meeting and Plaintiff's Recommendation for Termination

Plaintiff argues that she can "establish a causal connection between her protected activity and the proposed disciplinary action relating to the [November 20, 2013] SSP meeting and her subsequent termination" based on a "pattern of abuse." Pl.'s Opp. at 29. She contends that while the SSP had been overdue for months, "Crump suddenly emailed Sgt. Meagher [on November 7, 2013] for the very first time since she first received the SSP notice in June," and that Crump did this just two days after she had been served with a deposition notice in the pending OEA appeal on November 5, 2013. *Id.*

Plaintiff's ongoing litigation of the OEA appeal was protected activity, and this chain of events – if proved – could give rise to an inference of a causal connection between her protected activity and an adverse employment action. But the problem with plaintiff's theory is that the evidence does not establish that Crump emailed Meagher to jump start the SSP process after receiving the deposition notice. The fact is that Meagher emailed Crump, Ex. AA, and plaintiff provides no evidence that Meagher had notice of the pending appeal or of the deposition notice. So, all plaintiff has shown is that these two events occurred close in time to one another.

Because defendant maintains that it initiated the SSP because of plaintiff's poor job performance, Def.'s Mem. at 12–13, and plaintiff has not come forward with evidence that would

contradict defendant's account, plaintiff has not provided evidence to create a genuine issue of fact on the question of whether placement on an SSP was retaliatory. *See Woodruff*, 482 F.3d at 530.

If plaintiff is arguing that it was the recommendation for termination, as opposed to the SSP meeting, that was initiated in retaliation for her pursuit of an OEA appeal and summoning Crump to a deposition, she cannot point to the temporal proximity that would give rise to an inference of a causal connection. Plaintiff was not recommended for termination until March 5, 2014, which was four months *after* Crump was served with the deposition notice.[15] This length of time is too attenuated to support a causal connection. *See Hamilton*, 666 F.3d at 1357–58.

In sum, plaintiff has failed to undermine her employer's legitimate, non-retaliatory reasons for the adverse employment actions, and she has failed to provide evidence from which a reasonable juror could infer that any of the adverse actions in question would not have occurred but-for the alleged retaliation. *See Nassar*, 133 S. Ct. at 2533. Therefore, the Court will grant defendant's motion on plaintiff's retaliation claim (Count II).

**III.     The Court will grant defendant's motion for summary judgment on Count III alleging constructive termination because plaintiff has failed to produce sufficient evidence of intolerable work conditions that would drive a reasonable person to quit.**

In her complaint, plaintiff states that she is bringing "a common law claim of constructive termination." Compl. ¶ 1; *see also id.* ¶ 32 ("[D]efendant . . . constructively terminated Ms. Bean's employment in violation of public policy and denied her the rights and privileges secured

---

15     Plaintiff also seems to argue that her ultimate termination was an adverse action and that she has "raised an issue of fact supporting her contention that she was fired prior to her retirement." Pl.'s Opp. at 30. But again, plaintiff's argument is refuted by her own evidence. In her deposition, plaintiff testified that she "retired before they terminated [her]." Bean Dep. at 26:2–4. And regardless, plaintiff has not presented any evidence from which a reasonable jury could infer retaliation because she was terminated on May 1, 2014 – approximately six months after the last protected action.

by the District of Columbia.").  She contends that she was forced to retire because her consistent failure to successfully challenge adverse employment actions would have led a reasonable person to believe that "pursuing relief from the proposed termination was an exercise in futility" and that "[her] termination was a certainty."  Pl.'s Opp. at 31.  However, constructive termination is not a stand-alone cause of action, *Dickens v. Dep't of Consumer & Regulatory Affairs*, 298 F. App'x 2, 3 (D.C. Cir. 2008); the constructive discharge doctrine "simply extend[s] liability to employers who indirectly effect a discharge that would have been forbidden by statute if done directly." *Simpson v. Fed. Mine Safety & Health Review Comm'n*, 842 F.2d 453, 461 (D.C. Cir. 1988).

Plaintiff has not brought any claims under District of Columbia law that would provide the basis for a common law constructive discharge claim.  *See Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361–63 (D.C. 1993) (finding plaintiff had been constructively discharged as part of her discrimination claim under the District of Columbia Human Rights Act); *Atlantic Richfield Co. v. D.C. Comm'n on Human Rights*, 515 A.2d 1095, 1101 (D.C. 1986) (concluding that the record supported a finding of constructive discharge based on defendant's discriminatory and retaliatory behavior under the District of Columbia Human Rights Act).  In her opposition, plaintiff alludes to the possibility that defendant has conceded her hostile work environment claim, and also includes a header stating that she "Can Establish a Claim of Constructive Termination Under Title VII and District of Columbia Common Law."  Pl.'s Opp. at 30–31.  So, it is unclear if plaintiff intended to bring a hostile work environment claim, and/or a constructive discharge claim under the ADEA or Title VII.  But even if plaintiff had clearly articulated an intent to rely on either of these statutes, the Court would be bound to grant summary judgment in favor of defendant.

Under District of Columbia law, "[a] constructive discharge occurs when the employer deliberately makes working conditions intolerable and drives the employee into an involuntary

quit." *Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 138 (D.C. 2006), quoting *Sutherland*, 631 A.2d at 362. "The intolerability of the working conditions is judged by an objective standard, not the employee's subjective feelings." *Id.*; *see also Sutherland*, 631 A.2d at 362 (establishing a reasonable person standard to evaluate working conditions). Courts usually focus "on the existence of aggravating conditions in the workplace which would lead a reasonable person to resign." *Atlantic Richfield Co.*, 515 A.2d at 1101 (concluding that the plaintiff was constructively discharged where she "was subject to a continuous barrage of derogatory comments about her appearance, behavior, and morality to the point where her behavior was compared to that of a prostitute"). Typically, "[w]hether working conditions are so intolerable that a reasonable person is forced to resign . . . is a question for the trier of fact." *Sutherland*, 631 A.2d at 362.

To establish a hostile work environment claim under Title VII and the ADEA, plaintiff "must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [her] employment.'" *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004), quoting *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *see Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (applying this standard in a case under Title VII, the ADEA, and the Rehabilitation Act); *see also Vick v. Brennan*, 172 F. Supp. 3d 285, 301 (D.D.C. 2016) (observing that courts apply the same analysis when evaluating a hostile work environment claim under Title VII and the ADEA). And to establish that she was constructively discharged as a result of the hostile work environment, plaintiff must "show that the abusive work environment became so intolerable that her resignation qualified as a fitting response." *Suders*, 542 U.S. at 134. A claim of constructive discharge based on a discriminatory work environment under either statute requires a "finding of discrimination and the existence of certain 'aggravating factors'" that would force an employee to leave. *Mungin*

*v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997), quoting *Clark v. Marsh*, 665 F.2d 1168, 1174 (D.C. Cir. 1981).

Although the standards under the local and federal statutory schemes are slightly different, they both come down to the requirement that plaintiff must show extreme circumstances that made her work environment so intolerable that resignation was the only option. Plaintiff contends that Crump "admits that she marginalized Ms. Bean and intentionally made her an outcast among her team by directing them to refrain from talking to her or even being 'friendly,'" and that this constitutes the sort of severe conduct that is required to support a constructive termination claim. Pl.'s Opp. at 22. But this mischaracterizes the record, which reveals that Crump actually stated that she avoided "mak[ing] small talk" with and being "friendly" to plaintiff because plaintiff was not "receptive to it," and that other personnel in the department shared this opinion. Crump Dep. at 23:1–25:22. Even if plaintiff's account was supported by the record, criticism from a supervisor or being ignored by co-workers does not constitute the type of behavior that would give rise to constructive discharge. *Veitch v. England*, 471 F.3d 124, 131 (D.C. Cir. 2006) (concluding that such behavior is not an "aggravating factor" under Title VII).

Moreover, resignations are generally presumed to be voluntary. *Aliotta v. Bair*, 614 F.3d 556, 566–67 (D.C. Cir. 2010) (holding that employees were not constructively discharged under the ADEA when they were faced with the difficult decision of accepting a buy-out offer or staying and risking termination). There is nothing in the record to suggest that plaintiff was faced with "an impermissible take-it-or-leave-it choice." *Id.* at 567. Rather, what plaintiff has established is that she faced a series of adverse actions and then chose to retire before she could be terminated. Bean Dep. at 26:2–4 ("I retired before they terminated me."). Although this decision may have

been difficult, plaintiff has not pointed to any aggravating circumstances that would have transformed her choice into an involuntary decision.

Therefore, based on the evidence plaintiff has provided, no reasonable jury could find that her working conditions were so intolerable that her only option was to quit. So the Court will grant defendant's motion for summary judgment on Count III alleging constructive termination.

## CONCLUSION

Because plaintiff has provided direct evidence of discriminatory statements by her supervisor, the Court will deny defendant's motion for summary judgment on Count I. However, plaintiff has failed to produce sufficient evidence to enable a reasonable juror to infer that she was retaliated against or constructively terminated, so the Court will grant defendant's motion for summary judgment on Counts II and III.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 12, 2017

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
VIOLENA BEAN,                           )
                                        )
            Plaintiff,         )
                                        )
      v.                             )      Civil Action No. 14-1723 (ABJ)
                                        )
THE DISTRICT OF COLUMBIA,               )
                                        )
            Defendant.         )
_____)

## CHRONOLOGY OF EVENTS

**2004** – Plaintiff begins working for the Metropolitan Police Department ("MPD") as a Public Information Office ("PIO") clerical assistant.

**2010** – Gwendolyn Crump becomes the Director of Communications at MPD and plaintiff's direct supervisor. Crump's office reported directly to the Chief of Police, and Sergeant James Meagher was an Administrative Sergeant in the Executive Office of the Chief of Police.

**February 2011** – Crump cites plaintiff twice, once for insubordination and once for failing to submit complete news clippings.

**Early 2011** – Plaintiff files a sexual harassment complaint against a Sergeant Raul Mendez.

**October 24, 2012** – Plaintiff fails to log a call from a reporter, resulting in a citation.

**February 1, 2013** – Notice of Proposed Adverse Action recommending a fifteen-day suspension for the October 24, 2012 conduct.

**February 11, 2013** – Plaintiff seeks EEO counseling.

**February 13, 2013** – Plaintiff files OHR Complaint, alleging that she has been discriminated against on the basis of her age in connection with the fifteen-day suspension.

**March 5, 2013** – Notice of Final Decision to impose the fifteen-day suspension.

**March 18, 2013** – Plaintiff begins serving the fifteen-day suspension.

**April 4, 2013** – Plaintiff files OEA appeal of the fifteen-day suspension.

**April 12, 2013** – Plaintiff fails to complete a clipping assignment.

**April 30, 2013** – Plaintiff files EEOC Complaint against MPD, alleging that she has been subject to unlawful age discrimination and retaliation in connection with previous suspensions that had been imposed upon her as well as other harassing treatment in the workplace.

**May 24, 2013** – Internal Affairs Bureau generates automatic referral to place plaintiff in the Supervisory Support Program ("SSP").

**June 11, 2013** – Meagher and Crump are notified that plaintiff reached the SSP threshold and that an SSP must be created by August 30, 2013.

**June 27, 2013** –Proposed Notice of Adverse Action recommending a thirty-five-day suspension for the April 12, 2013 conduct.

**July 11, 2013** – Notice of Final Decision to suspend plaintiff for thirty-five days.

**July 22, 2013** – Crump is interviewed regarding plaintiff's EEOC Complaint.

**August 12, 2013** – Plaintiff begins serving the thirty-five-day suspension.

**August 16, 2013** – Crump exchanges emails with Human Resources regarding plaintiff's OEA appeal.

**August 20, 2013** – MPD files its response to plaintiff's OEA appeal.

**August 30, 2013** – Date by which Crump was supposed to complete plaintiff's SSP.

**September 18, 2013** – Plaintiff returns to work after completing the thirty-five-day suspension.

**November 5, 2013** – Crump is served with a deposition notice in plaintiff's OEA proceedings.

**November 7, 2013** – Meagher sends an email to Crump reminding her that it was necessary to schedule plaintiff's SSP meeting.

**November 20, 2013** – SSP meeting takes place. Meagher lodges a complaint regarding plaintiff's conduct at the meeting, and Crump handles the investigation into the allegations of her insubordination.

**December 9, 2013** – MPD produces discovery responses in OEA proceedings.

**December 27, 2013** – Crump submits a final investigative report concerning the events of November 20, 2013, and recommends that the investigation be forwarded to the Disciplinary Review Branch ("DRB") for review and recommendation.

**January 27, 2014** – Investigation concludes, and the Director of the DRB, Michael Eldridge, recommends plaintiff for termination.

**March 5, 2014** – Proposed Notice of Adverse Action advising plaintiff that she has been recommended for termination.

**April 11, 2014** – Hearing Officer issues a final decision, recommending that the proposed adverse action of termination be upheld.

**April 18, 2014** – Notice of Adverse Action Hearing Officer's Decision informing plaintiff that the decision to terminate her had been sent to the Deciding Official from the DRB, and that she could request an audience with the Deciding Official within seven days.

**April 25, 2014** – Plaintiff submits notice of intent to retire.

**May 1, 2014** – Deciding Official upholds plaintiff's termination.

**May 2, 2014** – Resignation becomes effective.